UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JAMES E. BAILEY, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) No. 4:10CV727 FRB |
| | ) |
| TROY STEELE, | ) |
| | ) |
| Respondent. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Missouri state prisoner James E. Bailey's pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. All matters are pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c).

**I. Procedural History**

On March 9, 2005, a jury in the Circuit Court of the City of St. Louis, Missouri, convicted petitioner of one count of Trafficking in the First Degree. Resp't Ex. 78. On April 14, 2005, the trial court sentenced petitioner as a persistent offender to twelve years' imprisonment. Id. at 95-97. On May 2, 2006, the Missouri Court of Appeals affirmed petitioner's conviction and sentence without discussion. State v. Bailey, 190 S.W.3d 562 (Mo. Ct. App. 2006) (order) (*per curiam*). Petitioner did not seek transfer to the Missouri Supreme Court. On June 6, 2005, petitioner filed a timely pro se Rule 29.15 motion for post-conviction relief, which was subsequently amended by appointed

counsel and denied by the trial court after petitioner and his trial counsel were deposed. Resp't Ex. G at 3-8, 13-22, 50-60. On April 28, 2009, the Missouri Court of Appeals affirmed the decision of the trial court. Bailey v. State, 281 S.W.3d 927 (Mo. Ct. App. 2009) (order) (*per curiam*). Mandate issued May 21, 2009. Resp't Ex. K. The instant petition was received by the Court on April 26, 2010; petitioner verified that he placed the petition in the prison mailing system on March 19, 2010. Applying the prison mailbox rule, see Van Orman v. Purkett, 43 F.3d 1201, 1202 (8th Cir. 1994), the petition was timely filed under 28 U.S.C. § 2244(d).[1]

In his petition, petitioner raises four claims for relief:

---

[1] Pursuant to 28 U.S.C. § 2244(d), a petitioner has one year from the date his judgment of conviction becomes final within which to file a petition for writ of habeas corpus. Where, as here, a Missouri petitioner does not seek transfer to the Missouri Supreme Court after direct appeal, his judgment becomes final upon expiration of the time within which to seek such discretionary review, that is, fifteen days after the court of appeals issues its opinion. Gonzalez v. Thaler, ___ U.S. ___, 132 S. Ct. 641 (2012); Mo. S. Ct. R. 83.02. Accordingly, petitioner's judgment of conviction here became final on May 17, 2006, fifteen days after the Missouri Court of Appeals affirmed his conviction on direct appeal. The one-year limitations period was tolled, however, during the pendency of petitioner's post-conviction proceedings, that is, from June 6, 2005, through May 21, 2009. See Payne v. Kemna, 441 F.3d 570, 572 (8th Cir. 2006) (post-conviction relief proceedings final on issuance of the mandate). Totaling the thirty-five days between May 2, 2005, and June 6, 2005; and the 302 days between May 21, 2009, and the filing date of March 19, 2010, 337 days elapsed on the date the petition was placed in the prison mailing system, thus making the petition timely filed.

**Ground 1:** That the trial court erred in failing to declare a mistrial after sustaining an objection to the prosecutor's opening statement.

**Ground 2:** That the trial court erred in allowing testimony from a police officer that drugs were being sold from petitioner's residence, because the testimony was hearsay and irrelevant.

**Ground 3:** That the trial court erred in allowing testimony from a criminalist as to the test results found by another criminalist.

**Ground 4:** That trial counsel was ineffective for failing to call petitioner as a witness and denying him his right to testify on his own behalf.

In response, respondent contends that the claims raised in the petition are without merit and should be denied.

## II. Exhaustion Analysis

A petitioner must exhaust his state law remedies before the federal court can grant relief on the merits of his claims in a habeas petition. 28 U.S.C. § 2254(b)(1); O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999). The Court must first examine whether the federal constitutional dimensions of the petitioner's claims have been fairly presented to the state court. Smittie v. Lockhart, 843 F.2d 295, 296 (8th Cir. 1988); see also Boerckel, 526 U.S. at 848. If not, the petitioner may still meet the exhaustion requirement if there are no currently available non-futile state remedies by which he could present his claims to the state court. Smittie, 843 F.2d at 296. When the petitioner's claims are deemed exhausted because he has no available state court remedy, the federal court still cannot reach the merits of the claims unless the petitioner

demonstrates adequate cause to excuse his state court default and actual prejudice resulting from the alleged unconstitutional error, or that a fundamental miscarriage of justice would occur if the Court were not to address the claims.  Martinez v. Ryan, ___ U.S. ___, ___, 132 S. Ct. 1309, 1316 (2012); Coleman v. Thompson, 501 U.S. 722 (1991); Wainwright v. Sykes, 433 U.S. 72, 87 (1977); Keithley v. Hopkins, 43 F.3d 1216, 1217 (8th Cir. 1995); Stokes v. Armontrout, 893 F.2d 152, 155 (8th Cir. 1989).  Before reviewing any claims raised in a habeas petition, the Court may require that every ground advanced by the petitioner survive this exhaustion analysis.  Rhines v. Weber, 544 U.S. 269 (2005).  A review of the record shows petitioner's claims for relief to be exhausted because petitioner properly raised the claims in state court upon which they were determined on their merits or summarily dismissed.

### III. Discussion

"In the habeas setting, a federal court is bound by the AEDPA to exercise only limited and deferential review of underlying state court decisions."  Lomholt v. Iowa, 327 F.3d 748, 751 (8th Cir. 2003).  Under this standard, a federal court may not grant relief to a state prisoner unless the state court's adjudication of a claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the

evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state court decision is contrary to clearly established Supreme Court precedent if "the state court arrives at a conclusion opposite to that reached by [the] Court on a question of law or . . . decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). A state court decision is an unreasonable application of clearly established federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." Id. at 407-08. Finally, a state court decision involves an unreasonable determination of the facts in light of the evidence presented in the state court proceedings only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record. 28 U.S.C. §2254(e)(1); Ryan v. Clarke, 387 F.3d 785, 790 (8th Cir. 2004).

A. Ground 1 - Prosecutorial Misconduct

In ground one of the petition, petitioner argues that the trial court erred in failing to declare a mistrial after sustaining an objection to the prosecutor's opening statement.

In his opening statement, the prosecutor told the jury that two police officers were going to "testify that they received information from a confidential informant about drug activity" at

petitioner's house. Resp't Ex. A at 145-46. Defense counsel objected and asked to approach the bench. Id. at 146. Defense counsel objected on the ground that hearsay discussion of the confidential informant's statements was highly prejudicial and violated petitioner's right to confront witnesses. Id. The prosecutor responded that he was not going any further and that it went to subsequent conduct. Id. at 146-47. The court told the prosecutor it did not want the officers talking about confidential informants. Id. at 147.

The court asked if defense counsel was requesting a mistrial. Id. at 148. Counsel explained that if the court were sustaining the objection, that counsel would request a mistrial. Id. The court denied the request, calling it an "oversized remedy." Id.

"Improper remarks by the prosecutor can violate the Fourteenth Amendment if they so infected the trial with unfairness as to make the resulting conviction a denial of due process." Barnett v. Roper, 541 F.3d 804, 812 (8th Cir. 2008) (citation and quotation omitted). Habeas relief should not be granted unless the prosecutor's remarks were "so inflammatory and so outrageous that any reasonable trial judge would have sua sponte declared a mistrial." Id. at 813 (citation and quotation omitted). "Relief will be granted only upon a showing of a reasonable probability

that the outcome would have been different but for the improper statement." Id. (citation omitted).

Petitioner has not demonstrated a reasonable probability that he would not have been convicted but for the prosecutor's lone comment about a confidential informant. Officer Wolff testified that he watched petitioner's house three or four times and saw activity consistent with the sale of narcotics, such as short term visitors going up to the house, entering it, and leaving shortly after. Resp't Ex. A at 152. The officers arrested petitioner at the scene of the crime, and Officer Wolff observed petitioner drop a bag containing crack cocaine, his wallet, and his identification. Id. at 156-158. Officer Scego testified that he also saw petitioner drop the bag. Id. at 208. This testimony is sufficient in itself for any reasonable juror to conclude that defendant was trafficking in drugs. As a result, petitioner is not entitled to habeas relief on ground one of the petition.

B.  Ground 2 - Trial Court Error, Officer Testimony

In ground two of the petition, petitioner argues that the trial court erred in allowing testimony from a police officer that drugs were being sold from petitioner's residence, because the testimony was hearsay and irrelevant.

As is stated above, Wolff testified that he saw several short term visitors coming and going from petitioner's residence three or four times in the week before the arrest. And the

officers observed petitioner abandon a bag containing crack cocaine and his identification. These statements were relevant to the charged crime of drug trafficking, and the statements were not hearsay because there were no out-of-court statements. Moreover, whether evidence was admissible under Missouri's evidence rules does not create a federal constitutional issue that is cognizable under the Court's limited jurisdiction. <u>Estelle v. McGuire</u>, 502 U.S. 62, 67 (1991). As a result, petitioner is not entitled to relief on ground two of the petition.

C.   <u>Ground 3 - Trial Court Error, Confrontation Clause</u>

In ground three of the petition, petitioner argues that the trial court erred in allowing testimony from a criminalist as to the test results found by another criminalist. Specifically, petitioner claims that the court erred in allowing Margaret Owens to testify about Joseph Steven's test results because the testimony was hearsay and violated the Confrontation Clause.

During direct examination, defense counsel stipulated that Owens was an expert qualified to test and analyze whether a substance is a controlled substance. Resp't Ex. A at 244. Owens testified as to the chain of evidence, including the fact that Stevens was the first analyst to come into contact with the cocaine. <u>Id.</u> at 245-48. Owens testified that Stevens had health problems and that the Department avoided issuing him subpoenas as a result. <u>Id.</u> at 248. Defense counsel stipulated that Stevens was

an expert in testing and analyzing controlled substances.  Id. at 247.

At sidebar, defense counsel objected to the introduction of Owen's lab notes on the basis that they were hearsay.  Counsel further claimed that Owen's lab notes were prejudicial in that they were not business records and served to bolster her testimony.  Id. at 251-52.  The court overruled the objection.  Id. at 253.

Owens testified as to the tests she performed and that the tests confirmed that the substance was cocaine base.  Id. at 253-54.  She then weighed the cocaine base and found that it weighed 7.49 grams.  Id. at 245-55.  Owens further testified that she made a lab report, specifying her findings.  Id. at 256-58.  The report was introduced as a business record over defense counsel's continuing objection.  Id. at 259.

The prosecutor asked Owens if her findings were the same as Stevens'.  Id. at 260.  Defense counsel objected "[f]or the same reasons."  Id.  The court overruled the objection, and Owens testified that Stevens had previously found that the substance was cocaine base.  Id. at 260.

Whether the testimony regarding Stevens' lab report was inadmissible under Missouri law does not present a cognizable claim in habeas proceedings.  See Estelle, 502 U.S. at 67.  "A state court's evidentiary rulings can form the basis for federal habeas relief under the due process clause only when they were so

conspicuously prejudicial or of such magnitude as to fatally infect the trial and deprive the defendant of due process." Parker v. Bowersox, 94 F.3d 458, 460 (8th Cir.1996). The inclusion of Owens' lab report or the testimony regarding Stevens' findings do not rise to that level. Owens testified that she tested the substance and that it was cocaine base. As a result, there is no due process violation.

Whether Owens' testimony regarding Stevens' findings violated the Confrontation Clause is a closer question. In Crawford v. Washington, the Supreme Court held that out-of-court statements by witnesses that are testimonial are barred, under the Confrontation Clause, unless witnesses are unavailable and defendants had prior opportunity to cross-examine witnesses. 541 U.S. 36, 54 (2004). Crawford did not hold that forensic laboratory reports were "testimonial," although the Supreme Court later applied Crawford to such reports. See Melendez–Diaz v. Massachusetts, 557 U.S. 305, 309–310 (2009) (admission of laboratory reports via "certificates of analysis" violated the Confrontation Clause because the certificates fell within the "class of testimonial statements" described in Crawford.); Bullcoming v. New Mexico, 131 S. Ct. 2705, 2716-17 (2011) (blood-alcohol analysis report, which certified that defendant's blood-alcohol concentration was well above the threshold for aggravated driving while intoxicated under New Mexico law, and

which was introduced at trial through the testimony of an analyst who had not performed the certification, was "testimonial" within the meaning of the Confrontation Clause.). Whether petitioner is eligible for relief on his Confrontation Clause claim depends on whether "clearly established Federal law, as determined by the Supreme Court of the United States," at the time petitioner's direct appeal was decided, dictated that the state courts were required to find that the lab report prepared by Stevens was "testimonial" under Crawford.

The Court of Appeals for the Ninth Circuit faced a nearly identical situation in Meras v. Sisto, 676 F.3d 1184 (9th Cir. 2012). In Meras, a laboratory technician obtained blood samples from the petitioner's jeans and determined that they contained the DNA of the petitioner and the victim. 676 F.3d at 1186. The laboratory technician was not available to testify at trial, so her supervisor testified as to the contents of the report. Id. The defense objected on the basis that the testimony violated the petitioner's right to confront witnesses against him. Id. The trial court overruled the objection, and the appellate court affirmed. Id.

The Ninth Circuit stated that the supervisor's testimony "probably" violated the Confrontation Clause, but that petitioner was not entitled to relief because the trial court's ruling was not contrary to "clearly established" federal law. Id. at 1186-87.

> We must first decide what constitutes clearly established Federal law, as determined by the Supreme Court of the United States, for purposes of Meras's Confrontation Clause claim. Section 2254(d)'s backward-looking language requires an examination of the state-court decision at the time it was made. It requires federal courts to focus on what a state court knew and did, so clearly established Federal law includes only Supreme Court decisions as of the time the state court renders its decision.

Id. at 1187 (quotations and citations omitted).

At the time Meras's judgment became final, Crawford had been decided, but Melendez-Diaz and Bullcoming had not. Id. The Ninth Circuit rejected the petitioner's contention that it could rely on the later cases because they were "dictated" by Crawford. The petitioner argued that "lab reports are testimonial because they're produced in anticipation of litigation." Id. at 1188. But the Ninth Circuit found that "Crawford didn't "clearly establish" such a rule." Id. The Ninth Circuit's reasoning is as follows:

> The [Supreme] Court identified "[v]arious formulations" that had been offered to define the "core class of 'testimonial' statements." Crawford, 541 U.S. at 51, 124 S. Ct. 1354. One of these formulations included statements "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." Id. at 52, 124 S. Ct. 1354 (internal quotation marks omitted). But the Court did not adopt this formulation, or any other. It left "for another day any effort to spell out a comprehensive definition of 'testimonial,'" and held only that, "[w]hatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or

at a former trial; and to police interrogations." Id. at 68, 124 S. Ct. 1354. This left the term susceptible to a broad range of reasonable applications. See Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S. Ct. 2140, 158 L.Ed.2d 938 (2004). Indeed, the Court acknowledged that its "refusal to articulate a comprehensive definition [would] cause interim uncertainty." Crawford, 541 U.S. at 68 n. 10, 124 S. Ct. 1354.

The question presented by Meras's claim—whether forensic lab reports are testimonial—"was exactly one of those areas of uncertainty." Likely v. Ruane, 642 F.3d 99, 102 (1st Cir.2011). State and federal appellate courts divided sharply over the question until the Supreme Court resolved the split in Melendez–Diaz, 129 S. Ct. 2527. Some courts held that forensic lab reports were testimonial. See State v. Johnson, 982 So. 2d 672, 679–80 (Fla. 2008) (compiling cases). Many others disagreed, and had rational bases for doing so. For example, dicta in Crawford explained that the Confrontation Clause incorporated "those [hearsay] exceptions established at the time of the founding. . . . Most of the[m] covered statements that by their nature were not testimonial—for example, business records. . . ." Crawford, 541 U.S. at 54–56, 124 S. Ct. 1354; see also id. at 76, 124 S. Ct. 1354 (Rehnquist, C.J., concurring in the judgment) ("To its credit, the Court's analysis of 'testimony' excludes at least some hearsay exceptions, such as business records and official records."). A number of courts therefore held that forensic lab reports were nontestimonial because they qualified as business records. See, e.g., United States v. De La Cruz, 514 F.3d 121, 133 (1st Cir.2008); United States v. Ellis, 460 F.3d 920, 925–26 (7th Cir.2006); Pruitt v. State, 954 So.2d 611, 616 (Ala. Crim. App.2006); Commonwealth v. Verde, 444 Mass. 279, 827 N.E.2d 701, 705 (2005); State v. Forte, 360 N.C. 427, 629 S.E.2d 137, 143 (2006); cf. State v. Thackaberry, 194 Or. App. 511, 95 P.3d 1142, 1145 (2004). These courts identified material

differences between business records and the kinds of statements Crawford held to be testimonial—"prior testimony at a preliminary hearing, before a grand jury, or at a former trial" and "police interrogations." Crawford, 541 U.S. at 68, 124 S. Ct. 1354. "Among other attributes, business records are neutral, are created to serve a number of purposes important to the creating organization, and are not inherently subject to manipulation or abuse." Forte, 629 S.E.2d at 143.

Courts further distinguished forensic lab reports from testimonial statements on the ground that the former are "not based on speculation, opinion, or guesswork, but instead [are] founded in scientific testing to determine the physical and chemical composition of the substance and the amount or quantity of the substance." Pruitt, 954 So.2d at 617 (citing Verde, 827 N.E.2d at 705). "Although the report is prepared for trial, the process is routine, non-adversarial, and made to ensure an accurate measurement." State v. Dedman, 136 N.M. 561, 102 P.3d 628, 636 (2004). Unlike testimonial statements, lab reports "are neutral, having the power to exonerate as well as convict." Forte, 629 S.E.2d at 143.

When the Supreme Court eventually held that forensic lab reports are testimonial, four Justices vigorously dissented. Writing on their behalf was Justice Kennedy, who was with the majority in Crawford. While continuing to believe Crawford was correctly decided, he wrote for the Melendez-Diaz dissenters that the majority "swe[pt] away an accepted rule governing the admission of scientific evidence" that had "been established for at least 90 years" and "extend[ed] across at least 35 states and six Federal Courts of Appeals." Melendez-Diaz, 129 S. Ct. at 2543 (Kennedy, J., dissenting). In the view of Justice Kennedy and those who joined him, Crawford "said nothing about scientific analysis or scientific analysts." Id. at 2555. Rather, Crawford addressed "formal

> statements made by a conventional witness—one who has personal knowledge of some aspect of the defendant's guilt." Id. at 2543. The dissenters saw crucial differences between the two: "First, a conventional witness recalls events observed in the past, while an analyst's report contains near-contemporaneous observations of the test. An observation recorded at the time it is made is unlike the usual act of testifying." Id. at 2551. "Second, an analyst observes neither the crime nor any human action related to it. Often, the analyst does not know the defendant's identity, much less have personal knowledge of an aspect of the defendant's guilt." Id. at 2552. "Third, a conventional witness responds to questions under interrogation. But laboratory tests . . . are not dependent upon or controlled by interrogation of any sort. . . . [T]hey are [not] produced by, or with the involvement of, adversarial government officials responsible for investigating and prosecuting crime." Id. (internal citation and quotation marks omitted).
>
> . . .
>
> We therefore have a case here where the state court probably committed constitutional error, but we are not free to correct it. This is the nature and effect of AEDPA.

Meras, 676 F.3d at 1188-90.

This Court agrees with and adopts the reasoning in Meras. The extensive disagreement among the lower courts about Crawford's reach demonstrates that the Missouri courts did not unreasonably apply clearly established federal law. The applicability of the Confrontation Clause to lab test results was not clearly established until Melendez-Diaz was decided in 2009. At the time petitioner's conviction became final, no clearly established

-15-

Supreme Court precedent barred the admission of forensic evidence without the in-court testimony of the forensic analyst. As a result, petitioner is not entitled to relief on ground three of the petition.

Further, the admission of the report, if error, was harmless error in view of the fact that Owens testified about her own examination of the substance and the results of her own examination. Further, the admission of the Stevens' report, in such circumstances, would not have had a substantial or injurious effect or influence in determining the jury's verdict, and petitioner cannot show prejudice therefrom. He is therefore not entitled to relief here. Brecht v. Abrahamson, 507 U.S. 619 (1993).

D. <u>Ground 4 - Ineffective Assistance of Counsel</u>

In ground four of the petition, petitioner argues that trial counsel was ineffective for failing to call him as a witness and denying him his right to testify on his own behalf.

To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must show that 1) his counsel's performance was deficient, and 2) the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). In evaluating counsel's performance, the basic inquiry is "whether counsel's assistance was reasonable considering all the circumstances." Id. at 688. The petitioner bears a heavy burden

in overcoming "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. To establish prejudice, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

A criminal defendant has a constitutional right to testify in his or her own defense. Rock v. Arkansas, 483 U.S. 44, 49 (1987); United States v. Bernloehr, 833 F.2d 749, 751 (8th Cir. 1987). This right is derived from the Fourteenth Amendment's due process clause, the Sixth Amendment's Compulsory Process Clause, and the Fifth Amendment's prohibition on compelled testimony. Rock, 483 U.S. at 51-53. "Because the right to testify is a fundamental constitutional guarantee, only the defendant is empowered to waive the right." Bernloehr, 833 F.2d at 751. A defendant's waiver of this right must be made knowingly and voluntarily. Id. A knowing and voluntary waiver of the right may be found based on a defendant's silence when his counsel rests without calling him to testify. Id. at 751-52. Under such circumstances the defendant must act "affirmatively" rather than apparently "acquiescing in his counsel's advice that he not testify, and then later claiming that his will to testify was overcome." Id. (internal quotation omitted).

In the instant case, when the defense rested, petitioner did not inform the court that he wished to testify. Resp't Ex. A at 288. At no time during the defense's case did petitioner tell the court he wanted to testify. Id. at 266-88. And petitioner did not inform the court that he wanted to testify on his own behalf when the court examined him after the defense rested. Id. at 289-92.

In a deposition prepared for his postconviction proceedings, petitioner testified that trial counsel told him he had a right to testify at trial, but he said she never called him to the stand. Resp't Ex. G at 38. He further testified that he "kept interrupting the court, asking the judge, is my lawyer going to let me take the stand[?] The judge said, Mr. Bailey, don't worry about it, she's going to put you on the stand if you need to be on the stand." Id. He claimed that if he would have been called to testify that he would have told the jury that he did not have any drugs when he was arrested. Id.

Petitioner's counsel was also deposed. She testified that she had tried over twenty criminal cases by the time she took petitioner's case. Id. at 27. She testified that she explained the advantages and disadvantages of testifying to petitioner, and that it was his decision whether he ultimately testified or not. Id. She further testified that she asked petitioner if he wanted

to testify both before trial and at the beginning of the defense's case, and she claims that he decided not to testify. Id. at 28-29.

The motion court denied relief on this claim, finding that petitioner's deposition testimony was not credible and that trial counsel's testimony was credible. Id. at 59-60. The Missouri Court of Appeals affirmed, giving deference to the motion court's credibility determination. Resp't Ex. J at 3.

Petitioner's self-serving statements during his deposition are contradicted by the record. There is no indication in the trial transcript that petitioner ever interrupted the court and asked to be allowed to testify. Rather, petitioner did not object when the defense rested without calling him to testify. As a result, petitioner's decision to waive his right to testify was knowing and voluntary. See Bernloehr, 833 F.2d at 751-52. The Missouri Court of Appeals' decision that trial counsel was not ineffective was not contrary to, or an unreasonable application of, clearly established federal law. Consequently, petitioner is not entitled to relief on ground four of the petition.

Therefore, for all of the foregoing reasons,

**IT IS HEREBY ORDERED** that petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 is dismissed without further proceedings.

**IT IS FURTHER ORDERED** that no certificate of appealability shall issue in this cause inasmuch as petitioner has

failed to make a substantial showing that he has been denied a constitutional right.

Judgment shall be entered accordingly.

_Frederick R. Buckles_
UNITED STATES MAGISTRATE JUDGE

Dated this 5th day of September, 2013.